UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. CR410-154 |
| ) | |
| MARY O. BURROUGHS ) | |
| ) | |
| Defendant ) | |

**REPORT AND RECOMMENDATION**

Mary Burroughs has been indicted for embezzlement from a nursing home receiving federal funding, in violation of 18 U.S.C. § 666; money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); fraudulent use of an unauthorized access device, in violation of 18 U.S.C. § 1029, and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). Burroughs moves to dismiss the indictment's money laundering counts on the ground that they fail to allege sufficient facts supporting a money laundering violation. Doc. 28. She also moves to dismiss Count Nine, contending that § 666 does not extend to the conduct alleged. Doc. 29.

# I. BACKGROUND

As the administrator of Riverview Health & Rehabilitation Center, a federally-funded nursing home in Savannah, Georgia, Burroughs allegedly raided the nursing home's bank money market account using -- without that entity's knowledge or authorization -- account withdrawal slips.[1] Doc. 1 at 1-2. With that cash she got the bank to issue her "official checks" made payable to various third parties. *Id.* at 2. She also misused an ex-employee's uncanceled "corporate credit card" for her own benefit. *Id.* Finally, she aided others in stealing copper piping and other metal objects from a Riverview building. *Id.*

---

[1] For purposes of defendant's motions, the facts in the indictment are accepted as true. *United States v. Pendergraft*, 297 F.3d 1198, 1204 (11th Cir. 2002) (the sufficiency of an indictment presents a legal question, which must be determined by looking solely to the face of the indictment) cited in *United States v. Perraud*, 672 F. Supp. 2d 1328, 1344 (S.D. Fla. 2009). Furthermore, this Court "may not take into account the sufficiency of the evidence supporting the indictment when ruling on a motion to dismiss, as no summary judgment procedure exists in criminal cases." *Perraud*, 672 F. Supp. 2d at 1344. "Instead, [Burroughs] may test the factual sufficiency of the Government's case by a motion for acquittal under Rule 29, Fed. R. Crim. P." *Id.* at 1345 n. 6. Finally, the indictment is an exercise in word economy. It does not supply peripheral facts like *how* Burroughs used "withdrawal tickets" and purchased "official checks," so the Court -- if only to enable an intelligible narrative here -- simply surmises that she presented withdrawal slips to a teller and then successfully asked the teller for cashier's checks.

The "Money Laundering" Counts (Five through Eight), allege that after embezzling Riverview's cash Burroughs engaged in "transactions … designed in whole and in part to conceal and disguise the nature, ownership, control, and source of the proceeds of said specified unlawful activities and that, while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity." *Id.* at 5. She did that by getting the bank to turn $94,000 of Riverview's money into an official bank check, which she then deposited, along with $5,000 in cash (from where this $5000 came the indictment does not say), into another bank's account in the name of the "Estate of EHJ." *Id.* at 5 (Count Five). She next got the bank (again with Riverview's money) to give her two official bank checks payable to "Burroughs Heating & Air" and deposited them into "Burroughs Heating & Air, Inc.'s" account at another bank. *Id.* at 6 (Count Six). Similarly, she obtained two more official bank checks payable to "Hendrix Machinery, Inc." and "O.C. Welch Ford-Lincoln-Mercury, Inc." *Id.* at 6 (Counts Seven & Eight). Relatedly, the indictment seeks a § 1956-based forfeiture of, *inter alia*, a "Kubota tractor." Doc. 1 at 8.

3

## II. ANALYSIS

### A. Sufficiency Challenges

Under Fed. Cr. R. P. 7(c)(1), which governs the indictment's minimum notice requirement, an indictment is sufficient if it

> (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.

*United States v. Jordan*, 582 F.3d 1239, 1245 (11th Cir. 2009) (quotes and cite omitted). A district court therefore must dismiss an indictment if it does not state a prosecutable offense, fails to *allege facts* which constitute a prosecutable offense, or otherwise fails to allege that the defendant performed acts which, if proven, constitute the violation of law for which she is charged. *United States v. Adkinson*, 135 F.3d 1363, 1372 n. 23 (11th Cir. 1998); *see also Unites States v. v. Seher*, 562 F.3d 1344, 1356 (11th Cir. 2009) (conviction will not be upheld "'if the indictment upon which it is based does not set forth the essential elements of the offense.' *United States v. Gayle*, 967 F.2d 483, 485 (11th Cir. 1992) (en banc)."). It "need not allege in detail the factual proof that will be relied upon to support the charges," *United States v. Anderson*, 2009 WL

4

4625400 at * 2 (S.D. Ga. Dec. 7, 2009) (quotes and cites omitted), but it must do something more than merely track the language of the relevant statute -- it must "also provide[] a statement of facts and circumstances that give notice of the offense to the accused." *Jordan*, 582 F.3d at 1246. Finally, the indictment must be read as a whole and given a common sense construction. *Id.* at 1245.

## B. Money Laundering

To launder money is to conceal its unlawful origins. Typical cases involve "transaction concealment" and "transportation concealment." For a § 1956(a)(1)(B)(i),[2] transaction-concealment conviction, the government must prove beyond a reasonable doubt that:

---

[2] Under that statute,

> [w]hoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . knowing that the transaction is *designed* in whole or in part . . . to *conceal* or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . . shall be sentenced to a fine . . . or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956(a)(1)(B)(i) (emphasis added). "Designed," as used here, requires proof of a purpose. *Cuellar v. United States*, 550 U.S. 550, 128 S. Ct. 1994, 2005 (2008) ("[W]hen an act is 'designed to' do something, the most natural reading is that it has that something as its purpose"). Thus, the government cannot simply point to

5

> (1) the defendant *conducted* or attempted to conduct a financial transaction; (2) the *transaction* involved the proceeds of a statutorily unlawful activity [hence, an earlier, *distinctly separate* transaction]; (3) [she] knew the proceeds were from some form of illegal activity; and (4) [she] knew a purpose of the transaction was to *conceal* or disguise the nature, location, *source*, ownership, or control of the proceeds.

*United States v. Miles*, 290 F.3d 1341, 1355 (11th Cir. 2002) (emphasis added); *United States v. Gayle*, 353 F. App'x 268, 272 (11th Cir. 2009). Here, then, the question is whether the indictment sufficiently alleges that Burroughs engaged in two separate transactions: first embezzling the money and then concealing it. In that respect, a "transaction" includes

> a deposit to a financial institution. 18 U.S.C. § 1956(c)(3). A person "conducts" a financial transaction by "initiating, concluding, or participating in initiating, or concluding a transaction[.]" *Id.* § 1956(c)(2). [And e]vidence of concealment includes "*unusual* secrecy surrounding the transaction" and "structuring the transaction in a way to avoid attention." *Miles*, 290 F.3d at 1356 (quotation marks, citation, and bracket omitted).

*Gayle*, 353 F. App'x at 273 (emphasis added).

In choosing how far to cast the money laundering statute's net, Congress decided that § 1956(a)(1)(B)(i) could not capture the mere act

---

a random action and rely on speculation that it "must have meant" money laundering. Rather, a plausible narrative must be alleged.

of spending illegally gotten money. *United States v. Majors*, 196 F.3d 1206, 1213 (11th Cir. 1999) ("concealment" provision of money laundering statute shows that it is a concealment statute, not a spending statute; evidence of concealment must be *substantial*). A money launderer therefore must engage in some act, omission, or financial transaction *designed to conceal* the money's illegal origin. *United States v. Puerto*, 2010 WL 3191765 at * 4 (11th Cir. Aug. 12, 2010).

Over the years courts have fleshed out what "designed to conceal" means. Thus, "[c]oncealment can be shown by evidence of unusual structuring, structuring of transactions to avoid attention, highly irregular features of the transaction, using third parties to conceal the real owner, or a series of unusual financial moves cumulating in the transaction." *Id.*; *United States v. Van Nguyen*, 602 F.3d 886, 902 (8th Cir. 2010) ("A reasonable jury could find [defendant] was putting cash into [his son's] account to hide its true source."); *United States v. Shellef*, 2010 WL 3119788 at * 28 (E.D.N.Y. Aug. 5, 2010) (even a *failure* to report income can factor into a money-laundering concealment charge).

Applying *Cuellar*, the Sixth Circuit has held that "concealment [must] be an animating purpose of the transaction," *United States v.*

7

*Faulkenberry*, ___ F.3d ___, 2010 WL 2925106 at * 10 (6th Cir. July 28, 2010), though it need "not be the *only* purpose of the transaction; the statute requires only that the transaction be designed 'in whole or *in part*' to conceal. 18 U.S.C. § 1956(a)(1)(B) (emphasis added)." *Id.* This Court agrees.³

Burroughs insists that the concealment leg of the money laundering statute applied to her, 18 U.S.C. § 1956(a)(1)(B)(i), is simply not supported by the indictment's factual allegations. Doc. 28 at 7. Section 1956(a)(1)(B), she reminds, addresses the design or concealment

---

³ *Cuellar* was a "transportation concealment" money laundering case brought under 18 U.S.C. § 1956(a)(2)(B)(i) (Burroughs was indicted under § 1956(a)*(1)*(B)(i)). But the Court focused on a similar concealment component and held that, under 18 U.S.C. § 1956(a)(2)(B)(i), "a conviction ... requires proof that the purpose -- not merely the effect -- of the transportation was to conceal or disguise a listed attribute." 128 S.Ct. at 2005. "There is a difference," it noted, "between concealing something to transport it, and transporting something to conceal it . . . that is, *how* one moves the money is distinct from *why* one moves the money. Evidence of the former, standing alone, is not sufficient to prove the latter." *Id.* (quotes, punctuation and cite omitted)); *see also United States v. Ness*, 565 F.3d 73, 77 (2d Cir. 2009) ("[A] showing that the defendant hid funds during transportation is not sufficient to support a conviction . . . even if substantial efforts have been expended to conceal the money.").

Given the similarity in statutory wording ("transportation concealment" requires transportation of money in a way that is "designed . . . to conceal," while "transaction concealment" involves "transactioning" in a way that is designed to conceal), *Cuellar's* same *"how* it is concealed" analysis rightly applies in this 18 U.S.C. § 1956(a)(1)(B)(i), "transaction concealment" case. In both contexts, then, concealment must be the animating purpose. Accordingly, the instant indictment must allege this.

of money obtained from the criminal activity. It thus requires the violation "'to follow in time the completion of the underlying transaction as an activity designed to conceal or disguise the origins of the proceeds.'" Doc. 28 at 7 (quoting *United States v. Major*, 196 F.3d 1206, 1212 (11th Cir. 1999)). "In other words, the crime must be complete (i.e., dirty money), before the money from the crime can be laundered (i.e., cleaned)." *Id.* But given the nature of the § 666 offense committed, she further argues, the indictment fails to allege any more than one transaction, rather than the statute's requisite separate transaction designed to conceal or disguise the illegal origin of the cash in question. *Id.* at 8. "On the face of the indictment," she thus concludes,

> it is plain that the § 666 counts are based on the transfer of monies out of Riverview's money market account to accounts allegedly owned or controlled by Mrs. Burroughs, and that the money laundering counts *are based on the transfer of the same monies* into the accounts allegedly owned or controlled by Mrs. Burroughs. The theft and embezzlement accounts were not "complete" until the alleged embezzlement by Mrs. Burroughs was complete. The indictment alleges no transactions "designed" to conceal or disguise "the nature, ownership, control, and source of the proceeds," for the purposes of section 1956(a)(l)(B), which are *separate or distinct* from the alleged underlying theft and embezzlement conduct.

9

Doc. 28 at 8 (emphasis added); *see also United States v. Washington*, 2010 WL 2245063 at * 14 (D. Kan. June 2, 2010) ("[M]oney laundering criminalizes a transaction in proceeds, not the transaction that creates the proceeds. Thus, there must be a discrete predicate crime that produced the proceeds, an act distinct from the conduct constituting money laundering.") (quotes and cite omitted).

Disagreeing, the government underscores what the indictment alleges, that: (a) Burroughs completed the § 666 (embezzlement) crime the moment she presented a withdrawal slip and got Riverview's cash; and (b) she then, for Counts Seven and Eight, went on to commit money laundering by converting that cash into checks payable to third parties -- rather than just walk away from the bank with the cash and spend it or deposit it in her own account. Doc. 34 at 2-4. And for Counts Five and Six she took a step beyond that: She then deposited the third-party-payable bank checks into accounts at *another* bank. *Id.*

Turning to Counts Seven and Eight first, they are problematic because they seemingly allege only common *spending* transactions (e.g., buy a tractor by asking a bank teller to put one's cash into a cashier's check payable to the tractor dealer), *not* sophisticated concealment (e.g.,

doing the same thing and then having the tractor dealer -- in a sham tractor sale transaction -- run the check through his account and hand back the cash).

But here, at the *allegation* phase of the case, the focus is on mere notice that the defendant has committed a crime, and not the nature and detail of evidence supporting the statutory elements.[4] As previously

---

[4] The cases show that at trial the evidence must be sufficient for a jury to find that the defendant engaged in a transaction designed at least in part at concealing her ill-gotten gains. Sometimes such cases turn on subtle if not complex distinctions. *Compare United States v. Williams*, 605 F.3d 556, 565 (8th Cir. 2010) (defendant divided illegal proceeds into sums under $3000 to evade federal reporting requirements, used bank account in his own name to negotiate structured deposits, structured transactions with fictitious names to avoid law enforcement attention concerning nature and source of his funds, and repeated such acts of concealment eight times), and *United States v. Rubashkin*, 2010 WL 746879 at * 21 (N.D. Iowa Mar. 1, 2010) (series of steps designed to make checks deposited into bank "appear to be customer payments"), *with United States v. Caldwell*, 560 F.3d 1214, 1221-22 (10th Cir. 2009) (the evidence was not sufficient to establish a transaction that was designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds of a specified unlawful activity, as required to support the defendant's conviction for money laundering; the financial transaction charged in the indictment was $4,500 check from company owned by defendant to defendant's husband after company received a $10,000 "marketing service" fee from the proceeds of a fraudulent mortgage loan, but the company's check to defendant's husband, as well as another check to another participant in the mortgage fraud, not only failed to conceal what was going on, it actually exposed it, and revealed that the money was slated to go to the mortgage brokers all along); *United States v. Johnson*, 440 F.3d at 1291-92 (11th Cir. 2006) (jury's conclusion that defendant committed money laundering concealment by use of international transfer, in making five transfers of funds from United States accounts that he controlled to his mother's accounts in Luxembourg, was not supported by substantial evidence, in that government presented no evidence

noted, this simply means that the indictment must allege facts which, if proven, constitute the violation of the law for which defendant is charged. Under the Rule 7 standards cited supra, then, the indictment -- to borrow from an evidentiary sufficiency case -- need only recite a minimum set of facts showing money "better concealed or concealable after the transaction than before." *Johnson*, 440 F.3d at 1291) (quotes and cite omitted).

Here, Counts Seven and Eight allege that Burroughs went out of her way to conceal her embezzlement of her employer's funds by taking the extra step of immediately converting Riverview's cash into "official" bank checks (presumably without reference to the remitter) made payable to third parties. She did not simply send Riverview checks to the third parties or deposit Riverview funds into her own checking account, then write checks from *that* account to third parties. Instead, she obtained bank checks payable to the order of those third parties. The

---

of unusual secrecy, questionable structuring, highly irregular features of transfers, or multiple movements of same funds that assisted in concealing their original source); *United States v. Washington*, ___ F. Supp. 2d ___, 2010 WL 2245063 at * 14-15 (D. Kan. Jun. 2, 2010) (granting judgment of acquittal on money laundering count because "the underlying criminal activity was not a distinct activity from that which the government argues constitutes money laundering.").

12

grand jury concluded that Burroughs did so in order to obfuscate the source of the funds and to create less of a paper trail than if she just used her own personal checks. Thus, the indictment is sufficient.

It may be true that those who want to make a large-ticket purchase (e.g., car, tractor) often obtain bank checks payable to such tractor and car dealers who simply will not transfer title to a big-ticket item on a personal (thus highly "bounceable") check; cashiers' checks don't bounce. But it also is true that such an argument would go to an evidential, not an "allegational," sufficiency challenge, where the concern is limited only to notice and Double Jeopardy issues. Reading the indictment as a whole, in Counts Seven and Eight the grand jury alleges that Burroughs embezzled Riverview's money and knowingly concealed it by purchasing cashiers' checks rather than just taking the cash to buy things. That puts her on notice of what crime she is accused of committing. For that matter, the Eleventh Circuit has

> never limited criminal liability under this statute to cases involving a long series of transactions; as § 1356(a) makes clear, even one transaction can be enough. For example, in *United States v. Starke,* 62 F.3d 1374, 1377 (11th Cir. 1995), we upheld a money laundering conviction against a defendant who did nothing more than take currency from undercover agents which he had reason to believe was drug-related, go to his bank, and purchase cashiers checks made out to those agents. Without much analysis or

discussion, we affirmed his conviction because we found there was enough evidence for a jury to conclude that the transactions "were designed to conceal the funds or the source of the funds." *Id.* at 1384. The crux of cases like *Starke*, however, is that the money is better concealed or concealable after the transaction than before.

*United States v. Blankenship*, 382 F.3d 1110, 1130 (11th Cir. 2004).

Counts Five and Six are more straightforward. In Count Five Burroughs is accused of getting the bank to turn $94,000 of Riverview's money into an official bank check, which she then deposited, along with $5,000 in cash, into *another* bank's account in the name of the "Estate of EHJ." Doc. 1 at 5. That, too, is enough to satisfy Rule 7's factual-sufficiency (design and concealment) requirement. Burroughs next got the bank (again with Riverview's money) to give her two official bank checks payable to "Burroughs Heating & Air"[5] and deposited them into "Burroughs Heating & Air, Inc.'s" account at *another* bank. *Id.* at 6 (Count Six). She is thus charged with engaging in a financial transaction aimed at concealing the money's origin. That, too, passes Rule 7 muster.

---

[5] Though the indictment makes no mention of any relationship between Burroughs and this entity, the pretrial services report reflects that Burroughs Heating & Air, Inc. is a family owned business operated by her son.

## C. "Route 666"

Burroughs next argues that the indictment veers 18 U.S.C. § 666 off the route Congress set for it. The indictment alleges that

> Riverview owned and maintained buildings at its Savannah, Georgia location, including the Hodge building. Without authorization or authority, Defendant Burroughs, aided and abetted, counseled and procured others to remove copper piping and other metal objects from items within Riverview's Hodge building, which she then converted and sold as scrap metal. Defendant Burrough's conversion of the scrap metal caused hundreds of thousands dollars in damages to Riverview's Hodge building.

Doc. 1 ¶ 5; doc. 29 at 1-2. The indictment applies this portion of § 666:

> (a) Whoever, if the circumstance described in subsection (b) of this section exists--
>
> (1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof--
>
> (A) . . . steals . . . or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, *property* that--
>
> (i) is valued at $5,000 or more, and
>
> (ii) is owned by, or is under the care, custody, or control of such organization, government, or agency . . .
>
> shall be fined under this title, imprisoned not more than 10 years, or both.
>
> (b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one

year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

18 U.S.C. § 666 (emphasis added). Count Nine accuses Burroughs of violating § 666 when, as Riverview's agent, she "stole and converted property [the copper] valued at $5000 or more [i.e., § 666's minimum dollar value requirement]. . . ." Doc. 1 at 6.

Cases have applied § 666 to federal *funds* theft:

> Under 18 U.S.C. § 666, *federal funds theft* requires proof beyond a reasonable doubt that (1) the defendant was an agent of an organization; (2) the organization receives more than $10,000 from a federal grant program in one year; (3) the defendant embezzled, stole, obtained by fraud, or otherwise without authority knowingly converted or intentionally misapplied property valued at $5,000 or more that was under the organization's care, custody, or control.

*United States v. Williams*, 527 F.3d 1235, 1240 (11th Cir. 2008) (emphasis added).

Burroughs contends that "theft of metals allegation constitutes a kitchen sink allegation against [her]. [Section] 666 was not intended to extend to acts of alleged theft or vandalism to non-Government owned real property. The theft of metals allegation and § 666 charge based thereon are therefore wholly outside the scope of § 666," so this Court should dismiss it. Doc. 29 at 2. She cites no case law here. Nor has the

government found any addressing the statute's extension to "personal property" (the copper), as opposed to "funds." Doc. 34 at 4-5.

The statute, however, uses the word property, not money. Applying the plain-meaning doctrine,[6] it unmistakably says that if one steals or converts "property," it is violated. Congress could have chosen to limit the statute's reach to money, but did not. *See United States v. Sanderson*, 966 F.2d 184, 187-89 (6th Cir. 1992) (upholding extortion and § 666 conviction of county sheriff's supervisor for stealing "materials" and "employee time" for use in his side business, court rejected defendant's argument that § 666 could not cover, as "a single course of criminal conduct," both "time" and "materials" theft: "we find section 666's notion of 'property' was intended to dovetail with the notion of property in [the general federal theft statute, 18 U.S.C. § 641] and to be coextensive in its reach -- [defendant's] theft of employee time is as much a theft of property as his theft of paint supplies, for the

---

[6] *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.") (*applied in United States v. McNabb*, 331 F.3d 1228, 1236 (11th Cir. 2003)); *see also Rine v. Imagitas, Inc.* 590 F.3d 1215, 1222 (11th Cir. 2009) (where the language of a statute is unambiguous, court need not, and ought not, consider legislative history).

17

purposes of his section 666(a)(1)(A) conviction."); *United States v. Lawson*, 2009 WL 1324157 at * 2 (E.D. Ky. May 11, 2009) ("The Court interprets *Sanderson* as concluding that employee time is property within the meaning of this term in § 666(a)(1)(A) because this term includes both tangible and intangible property."); *United States v. Wecht*, 2006 WL 1835818 at * 16 (W.D. Pa. Jun 29, 2006) (same result, applying § 666 to use of "vehicles, facilities, resources, equipment, and [office] space. . . ."). Defendant's argument therefore fails.

Accordingly, defendant Mary O. Burroughs's Motion to Dismiss the indictment's Money Laudering counts, doc. 28, along with her motion to dismiss Count Nine, doc. 29, should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this  25th  day of August, 2010.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA